E. Bauk v. Piedmont Cheerwine Bottling Co., 2020 NCBC 6.

STATE OF NORTH CAROLINA

ROWAN COUNTY

**Civil Action No. 18 CVS 358**

ELIZABETH BAUK,

    Petitioner,

v.

PIEDMONT CHEERWINE
BOTTLING COMPANY,

    Respondent.

**Civil Action No. 18 CVS 348**

STEPHAN BAUK,

    Petitioner,

v.

PIEDMONT CHEERWINE
BOTTLING COMPANY,

    Respondent.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
Master File 18 CVS 358
(Related Case 18 CVS 348)

**ORDER AND OPINION ON
PETITIONERS' REQUESTS
FOR COSTS AND FEES AND
TO MODIFY PROTECTIVE ORDER**

1. Elizabeth Bauk and her son Stephan Bauk are shareholders and former directors of Piedmont Cheerwine Bottling Company ("PCBC"). Each filed a petition demanding access to PCBC's corporate records. Not long after, PCBC agreed to produce the requested records subject to restrictions on the Bauks' ability to share them with others. The parties negotiated a consent order and a related protective order to govern the document production. All identified documents have now been produced.

2. Two matters remain. Elizabeth and Stephan seek to recover their costs, including reasonable attorneys' fees, of obtaining these documents from PCBC. And they seek permission to share the documents with Elizabeth's husband (also Stephan's father). PCBC opposes both requests. For the reasons discussed below, the Court **DENIES** the first request and **GRANTS** in part and **DENIES** in part the second.

> *Moore & Van Allen PLLC, by Robert C. Bowers and Frank E. Schall, for Petitioner Elizabeth Bauk.*
>
> *Strauch Green & Mistretta, P.C., by R. Austin Oyler and Jack M. Strauch, for Petitioner Stephan Bauk.*
>
> *Womble Bond Dickinson (US) LLP, by James A. Dean and Ronald R. Davis, for Respondent Piedmont Cheerwine Bottling Company.*

Conrad, Judge.

I.
BACKGROUND

3. PCBC is a closely held corporation. (*See* Aff. Thomas Page ¶ 5, ECF No. 41.1 ["Page Aff."].) Most if not all shares are held by individuals from three branches of the same family tree, descended from PCBC's founder. One branch includes the Bauks. Elizabeth is the company's largest shareholder; members of her immediate family, including Stephan, also own shares. (*See* Aff. Elizabeth Bauk ¶¶ 2, 4, ECF No. 35 ["E. Bauk Aff."].) A second branch includes Cliff Ritchie, PCBC's president and CEO. (*See* Aff. Cliff Ritchie ¶¶ 2, 4, ECF No. 19.5 ["Ritchie Aff."].)

4. For years, the Bauks have suspected Ritchie of self-dealing. PCBC distributes soft drinks made by its affiliate, Quality Beverage Brands, LLC ("QBB"), which in turn makes its soft drinks using syrup purchased from Carolina Beverage

Corporation. (*See* Ritchie Aff. ¶ 4; Aff. Michael Bauk ¶ 5, ECF No. 36 ["M. Bauk Aff."].) Ritchie apparently owns interests in all three companies and serves as an officer of Carolina Beverage. (*See* E. Bauk Aff. ¶ 7; M. Bauk Aff. ¶ 10.) According to the Bauks, Elizabeth's husband (Michael) served as PCBC's chief financial officer and discovered evidence that Ritchie, swayed by his competing interests, made business decisions that divert profits from PCBC to Carolina Beverage, in which he holds a larger and growing interest. (*See* M. Bauk Aff. ¶¶ 6, 9–11.) When Michael reported his concerns and asked for more information, he was fired (in 2011) and then removed from the board of directors (in 2016). (*See* M. Bauk Aff. ¶¶ 14–16.) Elizabeth, and later Stephan, continued the investigation by making periodic requests for corporate records, which they say PCBC partly but never fully satisfied. (*See, e.g.*, E. Bauk Aff. ¶¶ 12–16.)

5.      PCBC denies this and says it is the victim of the Bauks' harassment. By PCBC's count, it has produced thousands of pages of information in response to at least thirty requests by Elizabeth and other Bauk family members, refusing only those that were repetitive or for information the Bauks were not entitled to receive. (*See, e.g.*, Consol. Br. in Opp'n to Costs and Fees Ex. 1, ECF No. 44.2.) PCBC attributes the frequent record demands to bitterness over Michael's termination, which it says resulted from Michael's own misbehavior, and not to any legitimate interest in rooting out mismanagement. In affidavits, several board members fault Michael for "combative" behavior and for an episode in which he revealed QBB's confidential information without authorization—an action that also cost Michael his

seat as a PCBC voting representative on QBB's board of directors. (*See* Ritchie Aff. ¶¶ 14, 20, 22, 29, 31–33; Aff. Ralph McQueen ¶¶ 4–6, 8, 9, ECF No. 19.6; Aff. Lynn Little ¶¶ 4–6, ECF No. 19.7.)

6.    This litigation arises out of the most recent demands for corporate records by Elizabeth and Stephan in late 2017. Though PCBC provided some documents, extended negotiations over others led to a standoff. One of the sticking points was a request for records of QBB. The parties debated whether shareholders and directors have the right to inspect records of a corporation's affiliates and whether Elizabeth and Stephan should be able to share any records with Michael. (*See, e.g.,* Def.'s Br. Regarding Production Stipulation and Agreed Protective Order Ex. 1, ECF No. 19.2; Mem. in Supp. S. Bauk's Request for Costs and Fees Ex. G, ECF No. 29.7.) When PCBC maintained its objections, Elizabeth and Stephan gave an ultimatum that drew no response. (*See* E. Bauk Aff. ¶¶ 15, 16.) Days later, they filed separate petitions, now consolidated,[1] seeking a court order compelling PCBC to allow inspection. Elizabeth and Stephan were immediately removed from the board of directors, (*see, e.g.,* E. Bauk Aff. ¶ 5), but PCBC took a more conciliatory stance in its answers, agreeing to produce the requested documents subject to confidentiality protections, (*see, e.g.*, Answer to E. Bauk Pet. 12–14, Ex. 2, ECF Nos. 5, 5.2).

7.    Shortly after receiving PCBC's answers, the Court held an expedited status conference. *See* N.C.G.S. §§ 55-16-04(b), -05(b) (directing trial courts to hear

---

[1] The Court designated Elizabeth's action as the lead action. Documents filed in Stephan's action before consolidation have been incorporated into the lead action. (*See* Consolidation Order, ECF No. 10.)

demands for inspection of corporate records on an expedited basis). It appeared that the parties were open to compromise, so the Court gave counsel time to explore a deal in lieu of pressing forward with a formal case management schedule. The discussions were fruitful. By May 2018, the parties had agreed to a set of documents to be produced. They had also agreed that the documents contained sensitive information and made headway on a confidentiality agreement. There were two snags: PCBC opposed allowing Elizabeth and Stephan to share any documents with Michael, and it demanded disclosure of any experts with whom Elizabeth and Stephan intended to share the documents. The parties e-mailed to the Court drafts of two stipulated orders, which memorialized their agreements and flagged the open terms.

8. The Court convened a second status conference to address the remaining areas of disagreement. After hearing from all sides, the Court stated its view that the parties should permit Elizabeth and Stephan to share information with each other but allow PCBC to screen disclosure to third parties. This approach was sensible given that all parties had attested to the confidential nature of the records and that PCBC was producing them by agreement. The parties accepted the Court's guidance and tendered revised orders. At the parties' request, the Court entered both. (*See* ECF No. 21 ["Protective Order"]; ECF No. 22 ["Consent Order"].)

9. The Consent Order reflects PCBC's agreement to produce thirty overlapping categories of records, mostly related to QBB. (*See* Consent Order 2–4.) As stated in the Protective Order, these records "contain highly sensitive commercial information that would put [PCBC] at a competitive disadvantage if disclosed to third parties,

including any competitor." (Protective Order ¶ 2.) PCBC agreed to disclose the records subject to Elizabeth and Stephan's agreement to abide by the terms of the Protective Order. (*See* Protective Order ¶ 2.) Elizabeth and Stephan noted their intent to seek an award of attorneys' fees, an issue the Consent Order reserved for future decision. (*See* Consent Order 4–5.) PCBC eventually produced nearly 400 pages, the vast majority of which are records of QBB.

10. Once all the records were produced, the Court stayed the case to allow Elizabeth and Stephan time to consult their expert and, depending on the expert's opinion, to move to amend their pleadings to add legal claims. (*See* ECF No. 23.) Instead, in July 2019, they rekindled the dispute over Michael's access to the documents. In short, Elizabeth and Stephan believe their expert would benefit from reviewing the documents with Michael, which PCBC opposes. The Court requested briefing on whether to modify the Protective Order. Given the pace of progress, and in the hope of deciding all outstanding disputes at one time, the Court also directed Elizabeth and Stephan to present their requests for attorneys' fees. (*See* ECF No. 26.)

11. These issues have been fully briefed and are ripe. The Court held a hearing on November 13, 2019, at which all parties were represented by counsel.

II.
ANALYSIS

12. This case began with inspection demands by Elizabeth and Stephan in their roles as shareholders and directors of PCBC. Those demands were resolved by agreement more than a year ago. Having obtained what they sought, Elizabeth and

Stephan now assert that PCBC must pay their attorneys' fees. They also seek to share QBB's records with Michael over PCBC's objections. The Court takes up the requests for costs and fees first.

A. Attorneys' Fees

13. Elizabeth and Stephan base their requests for attorneys' fees on two statutes. For demands by shareholders,

> [i]f the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's costs (including reasonable attorneys' fees) incurred to obtain the order unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded.

N.C.G.S. § 55-16-04(c). For demands by directors, "[i]f an order [requiring inspection and copying of records] is issued, the court . . . may also order the corporation to reimburse the director for the director's costs, including reasonable counsel fees, incurred in connection with the application." *Id.* § 55-16-05(c).

14. Essential to an award of fees under either statute is "a court order requiring the corporation to allow inspection" of the requested records. *Carswell v. Hendersonville Country Club, Inc.*, 169 N.C. App. 227, 230, 609 S.E.2d 460, 462 (2005). There is no order to that effect here. The Consent Order—which is the only candidate—does not fit the bill. It is, like many consent orders, "a court-approved contract" and not an adjudication of rights. *E.g.*, *Reaves v. Hayes*, 174 N.C. App. 341, 345, 620 S.E.2d 726, 729 (2005); *see also Ibele v. Tate*, 163 N.C. App. 779, 781, 594 S.E.2d 793, 795 (2004). *Carswell* holds that a consent order of this nature is not a suitable predicate for an award of fees. There, the parties agreed to a consent order

that gave the petitioner "full and ongoing access to all records" of the corporation. *Carswell*, 169 N.C. App. at 229, 609 S.E.2d at 462. The Court of Appeals held that the consent order, which lacked any findings of fact or conclusions of law, was not a "court order enforcing [the] plaintiff's statutory right to inspection and copying" of corporate records. *Id.* at 230, 609 S.E.2d at 462. As a result, the plaintiff was not entitled to attorneys' fees. *Id.* (affirming denial of fees under section 55-16-04(c)).

15. So too here. In entering the Consent Order, the Court made no findings of fact or conclusions of law and did not decide whether Elizabeth or Stephan had the right to inspect the demanded records in their roles as either shareholders or directors. Neither did PCBC concede the point. (*See* Protective Order ¶ 1 ("PCBC contests Petitioners' right to inspect the Requested Documents.").) Rather, the parties negotiated which documents PCBC would produce by "stipulation, agreement, and consent," and the Court "approve[d]" that agreement. (Consent Order 1, 2.)

16. In their briefs, Elizabeth and Stephan argue that *Carswell* should be read narrowly because it invites abuse. Their worry is that corporations will have an incentive to refuse prelitigation inspection demands. The upside for the corporation is that some shareholders might give up rather than hire a lawyer, but if not, the corporation faces no downside because it could relent during litigation and still avoid paying the tab.

17. A danger perhaps, but the severity is debatable. Courts have plenty of tools to deter bad-faith litigation. *See, e.g.*, N.C. R. Civ. P. 11. And the incentive that Elizabeth fears would exist with or without the rule in *Carswell*: the respondent

corporation likely could avoid fees by producing the requested records absent a consent order. *See, e.g.*, *Beam v. Beam Rest Home, Inc.*, 2014 NCBC LEXIS 45, at *13–14 (N.C. Super. Ct. Sept. 25, 2014) (denying fee request after corporation produced records without consent order). Regardless, this Court is bound by *Carswell*, and its reasoning is consistent with the general rule that statutes authorizing awards of attorneys' fees "must be strictly construed." *Barris v. Town of Long Beach*, 208 N.C. App. 718, 722, 704 S.E.2d 285, 289 (2010) (citing *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 257, 400 S.E.2d 435, 437 (1991)).

18. At the hearing, Stephan's counsel conceded that the Consent Order does not trigger the right to attorneys' fees. He argued that the Court should decide now, for the first time, that PCBC was required to produce the requested records and then award fees on that basis. But there's no turning back the clock. Stephan has already received the records, mooting his inspection demand. *See 130 of Chatham, LLC v. Rutherford Elec. Membership Corp.*, 241 N.C. App. 1, 8, 771 S.E.2d 920, 925–26 (2015). A decision endorsing Stephan's initial demand at this point would be purely advisory and, thus, taboo.

19. Accordingly, the Court denies the requests for costs and fees. The Court need not address the parties' other disputes, including whether PCBC refused the inspection demands in good faith (under section 55-16-04) and whether Elizabeth and Stephan's inspection rights diminished when they were removed from the board of directors (under section 55-16-05).[2]

---

[2] It is worth noting that some of these arguments may present questions of first impression. *See Hoepner v. Wachovia Corp.*, 2001 NCBC LEXIS 3, at *14 (N.C. Super. Ct. June 14, 2001)

## B. Protective Order

20.    Next, the Court turns to the Protective Order.  As things stand, Elizabeth and Stephan are bound by their agreement not to share any records produced under the Consent Order with third parties, including Michael.  (*See* Protective Order ¶¶ 2, 4(e).)  They ask the Court to loosen those restrictions so that, at a minimum, Michael might view the documents.

21.    Though initially opposed to any relaxation of the Protective Order, PCBC has since agreed to allow Michael to review about half the disputed documents.  (*See* Consol. Opp'n to Modifying Protective Order 16–17, ECF No. 45 (listing ECF Nos. 33.2, 33.4–33.7, 33.22–33.31).)   Given PCBC's written consent, Elizabeth and Stephan are free to share these records with Michael so long as he agrees to abide by the Protective Order.  The Court grants the request to modify the Protective Order to that extent.

22.    But the Court denies any further modification.  It bears repeating that Elizabeth and Stephan obtained the records at issue by agreement, not through a judicial determination that they were entitled to inspect the records.  The Protective Order was the cornerstone of that agreement: in return for PCBC's disclosure of the records, Elizabeth and Stephan agreed not to share them.  They have not shown good cause to modify its terms over PCBC's objection.

---

(denying attorneys' fees when underlying issues were questions of first impression).  Neither party cited North Carolina law addressing the scope of inspection rights of former directors, for example.  In addition, the parties dispute whether and to what extent a shareholder is entitled to inspect records of a corporation's affiliate (here, QBB) when the corporation does not own a majority interest in the affiliate or have the power to appoint a majority of its board.  *See* N.C.G.S. § 55-16-02(h) (addressing affiliates controlled by corporation).

23.    First, the Court is satisfied that the records at issue are confidential.  PCBC offered uniform and unrebutted testimony that these documents—all belonging to nonparty QBB—contain sensitive financial data and other confidential information. (*See, e.g.*, Ritchie Aff. ¶¶ 8, 9; Page Aff. ¶¶ 5, 6; Aff. David Barker ¶¶ 4, 6–10, ECF No. 41.2.)  By contrast, Elizabeth and Stephan have vacillated.  Their briefs describe some of the data as stale and speculate that QBB forfeited any claim of confidentiality by sharing the information with PCBC.  (*See, e.g.*, E. Bauk Br. in Supp. Request to Modify Protective Order 7–8, ECF No. 34.)  Questioned at the hearing, though, counsel backtracked and worried that public disclosure might subject PCBC (and presumably QBB) to harm.  Having considered all relevant matters, the Court sees no reason to doubt the confidential nature of the records.

24.    Second, the Protective Order does not violate the statutory rights of Elizabeth or Stephan.  When a court grants a demand for inspection and compels the corporation to produce records, it must also decide whether to impose restrictions on the use and disclosure of the records.  *See* N.C.G.S. § 55-16-04(d).  Sometimes, the circumstances favor few or no restrictions.  *See Hoepner,* 2001 NCBC LEXIS 3, at *9–10 (compelling inspection and allowing shareholder to disclose shareholder list in proxy fight).  That's not the issue here.  The Court did not adjudicate Elizabeth and Stephan's demands, nor did it impose confidentiality restrictions on them.  They voluntarily agreed to the Protective Order, which they were free to do.

25.    Third, Elizabeth and Stephan have not established a clear need to share the records with Michael.  They assert only that Michael "will be able to more fully

analyze the documents produced and explain PCBC's practices and finances to assist the expert in analyzing the produced documents." (E. Bauk. Aff. ¶ 18.) Of course, Michael may now review and discuss roughly half the documents with the expert, and he has always been able to convey his background knowledge to the expert. Elizabeth and Stephan do not explain why Michael's review of the other records would be essential to the expert's analysis. Having the benefit of Michael's review might be convenient, but convenience is no reason to upend the parties' agreement.

26. Last, PCBC has a reasoned basis for maintaining its objection. It is undisputed that Michael disclosed QBB's confidential information once before. (*See* M. Bauk Aff. ¶ 20; Ritchie Aff. ¶¶ 31–33.) Though Michael insists that his motives were pure, he admits making the disclosure. This is ample reason to leave the agreed Protective Order as is, particularly given that neither Michael nor QBB is a party to this case.

27. In its discretion, the Court denies the request to modify the Protective Order.

III.
CONCLUSION

28. For these reasons, the Court **ORDERS** as follows:

a. The Court **DENIES** Elizabeth and Stephan's requests for costs and fees under N.C.G.S. §§ 55-16-04 and 55-16-05.

b. With PCBC's consent, the Court **GRANTS** the request to modify the Protective Order to permit Michael Bauk to view the documents located at ECF Nos. 33.2, 33.4–33.7, 33.22–33.31. Michael Bauk may access these documents

only upon signing Exhibit 1 to the Protective Order. In all other respects, the Court **DENIES** the request to modify the Protective Order.

29. No issues remain to be decided, and this action is now final subject to any rights of appeal.

**SO ORDERED**, this the 21st day of January, 2020.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases